# UNITED STATES DISTRICT COURT
for the
Eastern District Of Missouri

**FILED**
FEB 2 5 2020
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF THE SEARCH OF THE )
PREMISES LOCATED AT: **441 Shepley Drive,** )
**St. Louis, MO 63137** WITHIN THE EASTERN ) Case No. 4:20 MJ 1054 JMB
DISTRICT OF MISSOURI, MORE FULLY )
DESCRIBED IN ATTACHMENT A. )

## APPLICATION FOR A SEARCH WARRANT

I, __Andrew Frank__, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

**See Attachment A**

located in the ___Eastern___ District of ___Missouri___, there is now concealed

**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
✓ evidence of a crime;
✓ contraband, fruits of crime, or other items illegally possessed;
✓ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C., 841(a)(1) | possess with intent to distribute controlled substance(s) |
| Title 18, U.S.C., 924(c) | possess firearms in furtherance of drug trafficking crime |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

✓ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*
Andrew Frank, Special Agent, FBI

Sworn to before me and signed in my presence.

Date: _____February 25 2020_____

*Judge's signature*

City and State: ___St. Louis, MO___

Honorable John M. Bodenhausen, U.S. Magistrate Judge
*Printed name and title*
SAUSA: Nauman Wadalawala

**"NO KNOCK" ENTRY IS AUTHORIZED** _JMB_

**FILED**

**FEB 25 2020**

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES LOCATED AT: **441 Shepley Drive, St. Louis, MO 63137** WITHIN THE EASTERN DISTRICT OF MISSOURI, MORE FULLY DESCRIBED IN ATTACHMENT A. | No. 4:20 MJ 1054 JMB<br><br>FILED UNDER SEAL |

### AFFIDAVIT FOR "NO KNOCK" SEARCH WARRANT

I, Andrew Frank, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as **441 Shepley Drive, St. Louis, MO 63137** (hereinafter the **"Target Location"**), a location further described in Attachment A, for the items described in Attachment B.

2. I am a Special Agent with the FBI, and have been since September 20, 2015. I have been assigned to the St. Louis Field Division for approximately the last three and a half years, working both in the Safe Streets Gang Task Force and the Safe Streets Violent Crime Task Force. In connection with my official FBI duties, I investigate criminal violations of the Controlled Substances Act. I have received specialized training in the enforcement of federal narcotics laws, and I have been involved in all aspects of narcotics trafficking investigations, including (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking; (b) surveillance; and (c) analysis of documentary and physical evidence. I have also received training and participated in investigations involving the interception

of wire communications and other electronic communications. Finally, I have testified in grand jury proceedings for violations of federal narcotics laws. Based on my training and experience as an FBI Special Agent, I am familiar with the ways in which narcotics dealers conduct their drug-related business, including, but not limited to, their methods of importing and distributing narcotics; their use of telephones, and their use of numerical codes and code words to identify themselves, the nature of the communication and/or to conduct their transactions; and their concealment of drug proceeds in real and personal property as well as legitimate businesses.

3. I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

4. I have, through training and experience, become familiar with and utilized all normal methods of investigation including, but not limited to, visual surveillance, interviewing witnesses, the use of search and arrest warrants, the use of confidential sources, the use of pen registers, the utilization of undercover agents and the use of court authorized wiretaps. I am also familiar with methods of searching locations where narcotics and/or narcotic proceeds may be found. I have been involved in multiple drug investigations and have been involved in numerous arrests for narcotics related crimes.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, 841(a)(1) and 846, as well as Title 18, 924(c), have been committed by **Kenneth MCCOY** or other persons known and unknown. There is also probable cause to search the location described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## LOCATION TO BE SEARCHED

7. The location to be searched is: **441 Shepley Drive, St. Louis, MO 63116**, (hereinafter referred to as **"Target Location"**), described as a one story, yellow-colored, single family residence with a brown-colored roof, a dark-colored front door and windows, and small stairway landing in the front. There are three large windows located in the front of the residence. This residence is located approximately six houses east of the intersection of Renfrew Drive and Shepley Drive, on the north side of Shepley Drive. The Premises is described Attachment A.

8. Your affiant is requesting that investigators and law enforcement officers executing the requested warrant not be required to knock and announce an officer's presence. The circumstances supporting this request are described in the Probable Cause and Request for No Knock Authority sections of this affidavit.

## PROBABLE CAUSE

9. This investigation into MCCOY encompasses activities from January, 2020 to the present. As part of the on-going investigation into MCCOY, three controlled purchases of fentanyl have been coordinated using a confidential human source (CHS). The CHS is cooperating with law enforcement for monetary payment. The CHS has been used in numerous state-level cases

3

and several prior Federal cases. Information he/she has provided to law enforcement has been found to be consistently reliable.

10. A CHS contacted MCCOY the following dates to arrange the successful purchase of heroin/fentanyl from him: January 28, 2020 (3.07 grams/ fentanyl), February 10, 2020 (7.97 grams/ fentanyl), and February 21, 2020 (approximately 7 grams/ fentanyl).[1] On each occasion, the CHS obtained the specified quantities of fentanyl directly from MCCOY at the **Target Location**.

### January 28, 2020 Controlled Purchase

11. Several days prior to January 28, 2020, the CHS contacted MCCOY to arrange a controlled purchase of fentanyl, which was tentatively arranged for the morning of January 28, 2020. On the morning of January 28, investigators and CHS staged at a neutral meeting location and briefed. CHS and vehicle were searched for contraband, with negative results. CHS was provided with $100 in buy money and an electronic listening device, which was activated. The CHS placed a telephone call to MCCOY in the presence of investigators and confirmed the deal would occur at the **Target Location**.

12. Surveillance units and the CHS proceeded from the staging area to the **Target Location**. CHS arrived at the **Target Location**, parked, exited the CHS vehicle, and entered the **Target Location**. At this time, investigators overheard MCCOY and the CHS on the electronic

---

[1] As of time of writing, investigators are still awaiting the lab results for narcotics recovered during this purchase. However, based on investigators' training and experience, along with the color, texture, and general appearance of the substance, it was consistent with the fentanyl previously obtained from MCCOY and is believed to be fentanyl. Weight of narcotics is also an approximation at this time.

listening device as they completed the deal. The CHS exited the **Target Location,** entered the CHS vehicle, and departed the area. The CHS proceeded to a neutral location where he/she was met by a surveillance unit. On arrival to the neutral staging location, investigators seized approximately 3.07 grams of suspected fentanyl from the CHS. The CHS was again searched for contraband, with negative results. The drug evidence was sent immediately to the St. Louis Metropolitan Police Department (SLMPD) Lab, where it tested positive for fentanyl.

### February 10, 2020 Controlled Purchase

13.     Several days prior to February 10, 2020, the CHS contacted MCCOY to arrange a controlled purchase of fentanyl, which was tentatively set for the morning of February 10, 2020. On the morning of February 10, investigators and CHS staged at a neutral meeting location and briefed. CHS and vehicle were searched for contraband, with negative results. CHS was provided with $300 in buy money and an electronic listening device, which was activated. The CHS placed a telephone call to MCCOY in the presence of investigators and confirmed the deal would occur at the **Target Location**.

14.     Surveillance units and the CHS proceeded from the staging area to the **Target Location**. CHS arrived at the **Target Location**, parked, exited the CHS vehicle, and entered the **Target Location**. At this time, investigators overheard MCCOY and the CHS on the electronic listening device as they completed the deal. During this time, the CHS was able to photograph part of a narcotics supply located within the **Target Location** and forwarded the photograph to investigators. Investigators also overheard MCCOY referencing the narcotics supply as well as several firearms located at the residence. The CHS exited the **Target Location,** entered the CHS vehicle, and departed the area. The CHS proceeded to a neutral location where he/she was met by

a surveillance unit. On arrival to the neutral staging location, investigators seized approximately 7.97 grams of suspected fentanyl from the CHS. The CHS was again searched for contraband, with negative results. The drug evidence was sent immediately to the St. Louis Metropolitan Police Department (SLMPD) Lab, where it tested positive for fentanyl.

### February 21, 2020 Controlled Purchase

15. Several days prior to February 21, 2020, the CHS contacted MCCOY to arrange a controlled purchase of fentanyl, which was tentatively set for the afternoon of February 21, 2020. On the morning of February 21, 2020, investigators and CHS staged at a neutral meeting location and briefed. CHS and vehicle were searched for contraband, with negative results. CHS was provided with $300 in buy money and an electronic listening device, which was activated. The CHS placed a telephone call to MCCOY and confirmed the deal would occur at the **Target Location**.

16. Surveillance units and the CHS proceeded from the staging area to the **Target Location**. CHS arrived at the **Target Location**, parked, exited the CHS vehicle, and entered the **Target Location**. At this time, investigators overheard MCCOY and the CHS on the electronic listening device as they completed the deal. The CHS exited the **Target Location,** entered the CHS vehicle, and departed the area. The CHS proceeded to a neutral location where he/she was met by a surveillance unit. On arrival to the neutral staging location, investigators seized an amount of suspected fentanyl form the CHS, believed to be approximately 7 grams. The CHS was again searched for contraband, with negative results. The drug evidence was sent immediately to the St. Louis Metropolitan Police Department (SLMPD) Lab, where it is currently awaiting testing. The drug evidence was not field tested due to the potential presence of fentanyl, but, based on

investigators' training and experience, along with the color, texture, and general appearance of the substance, it was consistent with fentanyl, and with the other supplies of fentanyl previously obtained from MCCOY.

## BACKGROUND AND TRAINING

17. As part of my experience and training as a Special Agent and that of other special federal officers, special agents and police officers on the investigating team, we have accumulated information and training in the areas of narcotics-based economic crime. I and other members of the investigating team have extensive experience interviewing defendants, witnesses, informants and others who have experience in the gathering, spending, converting, transporting, distributing and concealing of proceeds of narcotics trafficking. Based upon the experience of myself and the investigating team and our participation in other pending and completed controlled substance and/or financial investigations of ongoing, extensive narcotics distribution conspiracies involving large amounts of controlled substances and money, I know the following:

   a. It is common for drug dealers to secret contraband, proceeds of drug sales, and records of drug transactions in their residence or other buildings under their control.

   b. Drug traffickers frequently keep near at hand, in their residence or other buildings under their control, paraphernalia for packaging, cutting, weighing and distributing of drugs. These paraphernalia include, but are not limited to scales, plastic bags, and cutting agents.

   c. Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, computer hard drives and disk records, money orders and other papers relating to the

transportation, ordering, sale and distribution of controlled substances. Drug traffickers commonly "front" (provide drugs on consignment) controlled substances to their clients. The aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them, specifically in their residence or in other buildings under their control.

d. Drug traffickers commonly maintain telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and / or landline telephones; digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association in fact with persons known to traffic in controlled substances or to facilitate such trafficking. These records are maintained where drug traffickers have ready access to them, specifically, in their residence or in other buildings under their control.

e. Drug traffickers take or cause to be taken photographs of them, their associates, their property and their product. These traffickers frequently maintain these photographs in their residence or other buildings under their control.

f. Persons involved in large-scale drug trafficking conceal in their residence or other buildings under their control large amounts of currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in

the distribution of controlled substances or which are proceeds from the distribution of controlled substances.

g. When drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize these profits. I know that to accomplish these goals, drug traffickers utilize financial institutions, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts. They maintain record of these transactions in their residence or other buildings under their control.

h. Evidence of occupancy and residence including, but not limited to utility and telephone bills, canceled envelopes, rental or lease agreements, and keys, is relevant evidence in narcotics prosecutions.

i. Drug traffickers frequently possess firearms and / or other weapons in their residence or other buildings under their control to protect their narcotics supplies and/or United States currency.

j. Drug traffickers frequently possess safes and / or other storage devices, security systems, cameras, cables, recording devices, monitors, and other video surveillance equipment in their residence or other buildings under their control to protect their narcotics supplies and / or United States currency.

k. It is common for drug traffickers to travel to major distribution centers to purchase drugs and/or to arrange for its distribution elsewhere in the United States. After purchasing drugs, these drug traffickers will transport or cause to be transported,

drugs to the areas in which they will distribute the drugs. The methods of transportation include, but are not limited to, commercial airlines, private airlines, rental automobiles, private automobiles, and government and contract mail carriers. Records of their travel are frequently kept in their residence or other buildings under their control.

## REQUEST FOR NO KNOCK AUTHORITY

18. This affiant specifically requests that the Court authorize the executing law enforcement officers to forego the requirement to "knock-and-announce" their presence prior to making entry into the Premises. The circumstances supporting this request are described a follows.

19. Based on the facts and circumstances discussed in this Affidavit, among other things, there is a significant threat to officer safety and the safety of other persons present at the Premises. In other words, investigators believe that there is a substantial likelihood of a violent confrontation should the search warrant team be required to knock and announce their presence at the time of the execution of the search warrant.

20. This belief is based on the fact that MCCOY has past arrests for assault and is known to keep at least two rifles and two handguns at the **Target Location**. CHS information indicated that MCCOY keeps several of these firearms, including at least one of the rifles, in or near the front closet of the **Target Location**, meaning that the "knock-and-announce" from law enforcement officers is likely to have the effect of placing MCCOY within close proximity of

10

one or more firearms if he responds to the officers at the door. CHS also advised that MCCOY stated he keeps these firearms loaded.

21. Several of MCCOY's statements to the CHS regarding the number and type of firearms present at the **Target Location** were overheard by investigators over the electronic listening devices during the controlled purchases, and confirmed their presence at the location. MCCOY also made comments regarding use of firearms to the CHS, in which he stated that the reason he had them out and visible within **Target Location** was so he could get to them if anyone tried to get into the house.

22. Your affiant believes that the totality of the investigation creates a substantial likelihood of violent confrontation and/or otherwise inhibits the investigation of the subject offenses should the search warrant team be required to knock and announce their presence at the time of the execution of the warrants. For these reasons, your affiant specifically requests that the Court authorize the search warrant teams to enter the **Target Location** without first knocking and announcing their presence, and at any time, day or night.

## CONCLUSION

23. Based on the foregoing I submit that this affidavit supports probable cause for a warrant to search the **Target Location** described in Attachment A and seize the items described in Attachment B.

## REQUEST TO SEAL

24. I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of

the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

_____
Andrew Frank
Special Agent FBI

Subscribed and sworn to before me on _____2/25_____, 2020

_____
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

*Property to be searched*

Target Location

The property to be searched is: **441 Shepley Drive, St. Louis, MO 63116, ("Target Location")**, described as a one story, yellow-colored, single family residence with a brown-colored roof, a dark-colored front door and windows, and small stairway landing in the front. There are three large windows located in the front of the residence. This residence is located approximately six houses east of the intersection of Renfrew Drive and Shepley Drive, on the north side of Shepley Drive.



**441 Shepley Drive, St. Louis, MO 63116**

## ATTACHMENT B

*Property to be seized*

1. All records and information relating violations of Title 21, United States Code, 841(a)(1) and 846, as well as Title 18, 924(c), that constitute fruits, evidence and instrumentalities of violations those violations involving **Kenneth MCCOY** and occurring after January 2, 2020, including:

   a. Controlled substances;

   b. Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons;

   c. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

   d. Cellular telephones, telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking;

   e. United States Currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of heroin or which are proceeds from the distribution of heroin;

f. Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

g. Papers, tickets, notes, schedules, receipts and other items relating to travel or transportation;

h. Indicia of occupancy, residency, rental and/or ownership of the vehicles and/o premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys;

i. Firearms and/or weapons; and

j. Security systems, cameras, cables, recording devices, monitors, and other video surveillance equipment.